IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
KELLEY E. WEIR, JR.,            :
                                :
    Plaintiff,                  :
                                :
vs.                             :
                                :      CIVIL ACTION 15-0052-CG-M
CAROLYN W. COLVIN,              :
Social Security Commissioner,   :
                                :
    Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21). Oral argument was waived in this action (Doc. 20). After considering the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further procedures not inconsistent with the Orders of this Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Weir was twenty-three years old, had completed a high school education (Tr. 46), and had no previous work experience (*see* Tr. 32). Plaintiff alleges disability due to obesity, lumbar spondylosis with chronic low back pain, polyarthralgias, anxiety, sleep apnea, depression, alcohol independence, and restrictive pulmonary disease (Doc. 13 Fact Sheet).

Weir applied for SSI on December 6, 2011, asserting disability as of that date (Tr. 26, 138-46). An Administrative Law Judge (ALJ) denied benefits, determining that there were specific sedentary jobs that Plaintiff could perform (Tr. 26-34). Weir requested review of the hearing decision (Tr. 22), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Weir alleges that:  (1) The ALJ's finding of Plaintiff's residual functional capacity (hereinafter *RFC*) is incorrect; (2) the ALJ did not properly consider the opinions and conclusions of his physicians; and (3) the ALJ improperly discounted Plaintiff's testimony (Doc. 13).  Defendant has responded to—and denies— these claims (Doc. 16).  The relevant evidence of record follows.[1]

On February 15, 2011, Psychologist John W. Davis examined Weir who had normal conversation but showed some anxiety and depression; his emotional responses were appropriate to thought, content, and situation (Tr. 270-74).  Memory was good in the present and recent and remote past; there were no loose associations or confusion.  Judgment and insight were good; intelligence was thought to be average.  The Psychologist noted "depressive symptoms such as appetitive disturbance (grossly overweight), sleep disorder, psychomotor retardation, decreased energy, and feelings of guilt or worthlessness;" his diagnosis was Depression, NOS (Tr. 273).  Davis indicated that Weir's "ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions [was] mildly impaired" (Tr. 274).  The

---

[1]The Court will not review medical evidence that pre-dates Weir's asserted disability date, unless required to address the claims brought herein.

Psychologist further found that his ability to understand, remember, carry out, and make judgments on complex work-related decisions was moderately impaired; he was also moderately impaired in his ability to interact appropriately with the public, supervisors, and co-workers and in responding appropriately to changes in routine settings (Tr. 274).

On October 18, 2011, Dr. Christopher H. Dyas noted Weir's weight of 489 pounds, standing at six foot, one inch, and a Body Mass Index of 64 for which he recommended gastric bypass surgery (Tr. 276-78, 280-83).

On February 2, 2012, Dr. Jonathan T. Miller, Internist, examined Weir for bilateral foot and joint pain for which he was taking an NSAID (Tr. 290-91).  He had normal range of motion (hereinafter *ROM*) in his neck and all major joints with no tenderness; he had normal motor and sensory function.  Breathing was normal with no distress.  He weighed in at 490 pounds and stood six foot, four inches tall and was encouraged to eat nutritiously and exercise.  A week later, examination results were the same; Plaintiff was taught stretching exercises for his foot pain and prescribed Ultracet[2] as needed (Tr. 288-89). Weir's morbid obesity increased his joint pain and hypertension.

On March 15, 2012, Psychologist Lucile T. Williams examined

---

[2]*Ultracet* is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain.  *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

4

Weir and found his affect appropriate to content of thought and conversation; he did not appear anxious, but seemed mildly depressed (Tr. 297-98).  Plaintiff was oriented in four spheres; immediate, recent, and remote memory were all good.  Thought processes were grossly intact with no loose associations, tangential, or circumstantial thinking; Weir was not confused. Insight and self-understanding were fair while judgment was poor; intelligence was thought to be average.  The Psychologist noted Plaintiff's admission of drinking a lot one night each weekend over a four-year period; she diagnosed Depressive Disorder NOS.

On March 1, 2012, Dr. Miller found no changes but noted that Weir could not get insurance approval for the gastric bypass (Tr. 299-300).  On April 25, Plaintiff complained of frequent headaches and fatigue over the prior two weeks for which he was given Fioricet;[3] the exam was otherwise normal (Tr. 301-02).  On June 1, though ROM in all major joints was good with no tenderness noted, Lortab 7.5[4] was prescribed for back and leg pain due to severe morbid obesity (Tr. 304-05).  Weight loss and improved diet compliance were reemphasized; Miller limited standing and walking.  That same date, the Doctor completed a

---

[3] *Fioricet* contains a barbiturate and relaxes muscle contractions involved in tension headaches.  http://www.drugs.com/fioricet.html

[4] *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

5

pain form indicating that Weir experienced pain frequently that would distract him from adequately performing work and that pain medicine would cause side effects, imposing mild limitations (Tr. 303).

Following an examination on June 12, 2012, Dr. Charles B. Rodning, Professor at the University of South Alabama Department of Surgery, wrote a letter to Blue Cross Blue Shield of Alabama indicating that Plaintiff was in serious need of gastric bypass surgery (Tr. 307, 317). "The ravages of his [super morbid obesity] will become evermore severe and debilitating, if operative intervention is not performed. We think it would be unconscionable to deny operative intervention" (*id.* at 307). On July 17, Rodning re-evaluated Weir, with multiple somatic complaints, and prescribed requested narcotics and anti-anxiety medications (Tr. 306).

On November 7, 2012, Dr. Miller saw Plaintiff for recurrent back and knee pain; he was stable with back tenderness (Tr. 321-22). Dietary compliance and restrictions were discussed, reviewed, and reemphasized.

On August 6, November 26, December 27, 2012, and January 3, 2013, Dr. Rodning wrote prescriptions for Lortab; on October 31, 2012, he prescribed Xanax;[5] on November 13 and 20 and December 4

---

[5]*Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).

6

and 18, 2012, Rodning prescribed both medications (Tr. 323-31).

On January 10, 2013, Dr. John Couch performed a lumbar paravertebral facet joint injection with fluoroscopy, finding no signs of lumbar spine infection; there was low back pain on extension and flexion (Tr. 332-34, 341-43).  Polyarthralgias were noted.

On January 7, 2013, Dr. Miller treated Weir for sinus and bronchitis symptoms; he was no in respiratory distress (Tr. 335-36).  Plaintiff had full ROM and no tenderness in his back.

On March 5, 2013, Dr. Thomas Dempsey, Orthopaedic, examined Weir who complained of chronic back pain; he had no radicular symptoms (Tr. 339-40).  Plaintiff weighed 520 pounds with a BMI of 65.  Weir walked with a waddle; he had 50% ROM in the lumbar spine.  Plaintiff claimed six-to-eight on a ten-point pain scale; back x-rays revealed no abnormalities.  Dempsey prescribed Ultram[6] and Naprosyn[7].

On March 11, 2013, Dr. Miller completed a physical capacities evaluation (hereinafter *PCE*) in which he indicated that Weir could sit for four hours at a time and total in a workday; though he could stand/walk for less than an hour at a

---

[6]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[7]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used for the relief of mild to moderate pain.  *Physician's Desk Reference* 2458 (52nd ed. 1998).

7

time, he could do that for four hours total (Tr. 337). Plaintiff could lift fifty pounds frequently and one hundred pounds occasionally; he could carry twenty-five pounds frequently and one hundred pounds occasionally.  He had no problems with simple grasping, pushing and pulling of arm controls, or fine manipulation; Miller did not state whether or not Plaintiff could use foot controls.  He could frequently crawl and reach, occasionally bend and squat, but never climb; he was mildly limited in activities at unprotected heights and being around moving machinery.  On a form completed the same day, Dr. Miller stated that Weir's pain was the same as reported nine months earlier, but his medication side effects were now expected to be severe and limit his effectiveness (Tr. 338; *cf.* Tr. 303).

At the evidentiary hearing, Plaintiff testified that he was twenty-three years old, lived with his mother and grandparents, and weighed five hundred, twenty pounds (Tr. 43-46; *see generally* Tr. 43-58).  Weir finished high school and had taken a semester of computer drafting and design in college, but quit because he could not sit through the classes.  He worked one day at Domino's but could not stand on his feet all day so he quit. He took naps three or four times a day because his medications

8

made him drowsy; he took Hydrocodone,[8] Lortab, Klonopin,[9] and Xanax. Dr. Miller is his primary physician. Plaintiff did not have the willpower to diet and it hurt too much to exercise; he could walk fifteen, stand twenty, and sit thirty minutes. Sleep and medication were the only things that relieved his pain; on a ten-point scale, his pain rated eight without medicine and six with it. Weir experienced sharp pain all over but specifically mentioned his back, knees, and feet. Plaintiff could not concentrate. He took the garbage out and folded clothes every now and then; he made his bed every once in a blue moon but never did his laundry. Generally, Weir took medications and slept or watched TV; he did not drive because it scared him. When he turned twenty-one, he would drink one or two weekend nights a month so he could have friends to hang out with, but he did not drink a lot presently. He took medication for hypertension, but it was not under control which caused headaches three or four times a week. He took anti-inflammatory medicines because his hands swelled and shook a lot.

This concludes the relevant evidence of record.[10]

---

[8]*Hydrocodone* is a narcotic analgesic used "for the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[9]*Klonopin* is a class four narcotic used for the treatment of panic disorder. *Physician's Desk Reference* 2732-33 (62nd ed. 2008).

[10]The Court notes that additional evidence from Drs. Miller and Couch was submitted to the Appeals Council, but was not considered by the ALJ (*see* Tr. 344-55; *cf.* Tr. 5, 37-38). As Plaintiff has raised

In bringing this action, Weir's first two claims are that the ALJ's RFC determination is incorrect because the ALJ did not properly consider the opinions and conclusions of two examining sources (Doc, 13, pp. 7-15).  Plaintiff specifically references his treating physician, Dr. Miller, and Psychologist Davis.

The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2015).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

It should also be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[11] *see also* 20 C.F.R. § 404.1527 (2015).

In her decision, the ALJ reviewed the medical evidence and gave "great weight to Dr. Miller's functional restrictions" as they were consistent with his treatment notes and Weir's

---

no claim that the Appeals Council failed to properly consider it (Doc. 13), the Court need not consider the evidence herein.

[11]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

testimony (Tr. 31). Psychologist Davis's assessment was given greater weight, over that of Dr. Sherman,[12] because the latter had performed a physical examination and concluded that Weir could not work for mental reasons, while Davis, a mental specialist, reached no such conclusion (Tr. 31). The ALJ found that Weir had

> the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c)[13] except the claimant can stand and walk no more than 30 minutes at one time, and no more than four hours in an eight hour day. Sitting is unrestricted with the usual breaks. The claimant can occasionally operate foot controls, climb ramps, stoop, and crouch. He should never climb ladders, scaffolds, ropes, and stairs, kneel, crawl, work at unprotected heights or with dangerous machinery, work in temperature extremes, near humidity and wetness, or exposed to concentrated environmental pollutants such as dust, chemicals, or fumes. The claimant must have minimal changes in work setting and routines. He is able to understand to carry out simple one or two-step instructions involving a few concrete variables in standardized situations. He should avoid tasks involving a variety of instructions or tasks.

(Tr. 29-30).

---

[12]Dr. Alan J. Sherman's report was not summarized herein as it was unnecessary for the claims raised (Tr. 248-54).

[13]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c) (2015) (footnote added).

11

A comparison of this RFC determination with Dr. Miller's PCE form indicates two differences bothering Plaintiff:  (1) The Doctor found Weir able to sit for four hours a day while the ALJ found "sitting unrestricted with the usual breaks;" and (2) the ALJ did not include Miller's reaching "only frequently" restriction in the RFC.

Plaintiff's assertions are correct.  The Court finds the ALJ's *sitting* language incorrectly characterized the Doctor's conclusion.  The ALJ attributed a half-day more of sitting to Weir's RFC than Dr. Miller found him capable.  The Court further finds that the ALJ also incorrectly suggested, by omission, that Plaintiff could continuously reach.[14]

Weir also points to differences in Psychologist Davis's conclusions and those of the ALJ as incorporated into her RFC determination.  Specifically, while Davis found that Plaintiff's ability to interact with the public, supervisors and co-workers was moderately impaired, the ALJ made no finding in this regard.

The ALJ then specifically credited Miller's functional restrictions report as the basis for the RFC determination, even though she got two of the elements wrong.  The ALJ also gave "greater weight"[15] to Davis's conclusions, but failed to point

---

[14]Performing an activity *frequently* means doing it only one-third to two-thirds of a day.  Social Security Ruling 83-10.  This is much different than doing it continuously.

[15]The Court acknowledges that giving "greater weight" to one

12

out what she found deficient in them. The ALJ used Miller's and Davis's conclusions, minus specific limitations, in her hypothetical questions to the Vocational Expert (hereinafter *VE*) and relied on that testimony to determine that there were specific jobs that Weir could perform (Tr. 33, 59-61). That determination is not supported by substantial evidence in light of its failure to include the limitations found by Miller and Davis and not rejected by the ALJ.

Plaintiff also claims that the ALJ improperly discounted his testimony regarding his pain and limitations (Doc. 13, pp. 15-19). The thrust of this argument, though, is that the ALJ ignored Dr. Miller's two pain evaluations.

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*,

---

examiner's conclusions over the "little weight" given to those of another examiner provides little guidance for the reviewer to understand how much weight is being given to whom. Nevertheless, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ has not done this here.

782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2014).

In her determination, the ALJ found that Weir's impairments could cause some of his symptoms, but that his "statements concerning the intensity, persistence and limiting effects of

14

these symptoms are not entirely credible" (Tr. 32). She gave three reasons for this determination: (1) Weir's hearing testimony was not fully credible; (2) his activities of daily living were inconsistent with a finding of disability; and (3) the severity of his pain had no medical support in the record (Tr. 32). It is the third reason that gives the Court pause for consideration.

Dr. Miller provided two different pain forms indicating that Plaintiff's pain would distract him from adequately performing work (Tr. 303, 338). In the more recent form, the Doctor indicated that Weir's medication regimen would cause severe side effects, limiting his effectiveness (Tr. 338). The ALJ did not acknowledge either of these forms in finding Plaintiff's allegations of pain and limitation non-credible. This determination was made in spite of finding that Dr. Miller's PCE was "consistent with [his] treatment notes, and the claimant's testimony of his back and knee pain" (Tr. 31). The ALJ's determination of Plaintiff's pain is not supported by substantial evidence because the ALJ chose to ignore evidence in the record.

Weir has brought three different claims in this action. All three have merit because the ALJ ignored evidence in the record she purportedly credited in finding against Plaintiff.

15

The ALJ's failure means that her decision is not supported by substantial evidence.

The Court must, however, strike a cautionary note as it does not find Weir disabled.  Dr. Miller's PCE form suggests that there might be jobs that Weir can perform.  However, the ALJ's decision fails to do what is necessary for the Court to reach that conclusion.

Therefore, it is **ORDERED** that the action be **REVERSED** and be **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's pain, limitations, and ability to work.  Judgment will be entered by separate Order.

DONE this 16th day of November, 2015.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE